No. 14- _416_

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

LIJKEL DIJKSTRA, individually and on behalf
of a class of all other persons similarly situated,

*Respondent-Plaintiff,*

v.

HOME LOAN CENTER, dba LENDINGTREE LOANS, et al.,

*Petitioner-Defendant.*

Petition to Appeal from the United States District Court for the Northern
District of West Virginia, Wheeling Division, Civil Action No. 5:11-CV-00152
*The Honorable John P. Bailey, District Judge*

DEFENDANT HOME LOAN CENTER, INC.'S PETITION FOR
PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

Randall L. Saunders
NELSON MULLINS RILEY &
SCARBOROUGH LLP
949 Third Avenue, Suite 200
Huntington, WV  25701
(304) 526-3500

Joseph S. Dowdy
KILPATRICK TOWNSEND &
STOCKTON LLP
4208 Six Forks Road, Ste. 1400
Raleigh, North Carolina 27609
(919) 420-1700

*Counsel for Petitioner Home Loan Center, Inc.*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _14-416_        Caption: _Lijkel Dijkstra v. Harry J. Carenbauer, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Home Loan Center, Inc. d/b/a LendingTree Loans ("HLC"), incorrectly identified as Home Loan Center_
(name of party/amicus)

_d/b/a Lending Tree Loans_

who is _____Petitioner_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      The corporate parent of HLC is LendingTree, LLC and the grandparent corporation is Tree.com, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:
      HLC is wholly owned by LendingTree, LLC, which is not a publicly held corporation.

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☑ YES ☐ NO
If yes, identify entity and nature of interest:

> Tree.com, Inc. which is a publicly held corporation, owns LendingTree, LLC, which owns HLC>

5.     Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Joseph S. Dowdy          Date: September 2, 2014

Counsel for: Home Loan Center, Inc.

## CERTIFICATE OF SERVICE
****************************

I certify that on September 2, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John W. Barrett, Esq.
Jonathan R. Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Michael A. Adams, Esq.
Hinerman & Associates, PLLC
P. O. Box 2465
Weirton, WV 26062
maa@hinermanlaw.com

/s/ Joseph S. Dowdy              9/2/2014
(signature)                          (date)

# TABLE OF CONTENTS

PAGE:

TABLE OF AUTHORITIES...................................................................iii

STATEMENT OF THE FACTS NECESSARY
TO UNDERSTAND THE QUESTION PRESENTED ............................................ 3

QUESTIONS PRESENTED ....................................................................... 6

THE REASONS WHY AN APPEAL IS AUTHORIZED BY
STATUTE AND SHOULD BE ALLOWED ......................................................... 7

    I.    THIS COURT HAS JURISDICTION TO PERMIT AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND TO ADDRESS ALL ISSUES THAT ARE CLOSELY RELATED TO THE CHALLENGED ORDER ................................................................. 7

    II.    THE UPL ISSUE MERITS AN IMMEDIATE DETERMINATION BY THIS COURT PURSUANT TO 28 U.S.C. § 1292(b) ................................... 9

    III.    SECTION 1292(b) REVIEW ALSO IS APPROPRIATE TO DETERMINE WHETHER FLAT FEES FOR NOTARY CHARGES ARE PER SE ILLEGAL. ....................................................................... 13

    IV.    THIS COURT SHOULD GRANT REVIEW UNDER 28 U.S.C. § 1292(b) TO RULE ON THE OPEN LEGAL QUESTION OF WHETHER DAMAGES, INCLUDING STATUTORY DAMAGES, MAY BE AWARDED FOR UPL CLAIMS BASED ON NOTARY CLOSINGS PRIOR TO THE WEST VIRGINIA SUPREME COURT'S 2010 MCMAHON DECISION. ....................................................... 14

    V.    SECTION 1292(b) REVIEW ALSO IS APPROPRIATE TO DETERMINE THE CONSTITUTIONALITY OF AWARDING CIVIL PENALTIES ON THE UPL AND NOTARY FEE THEORIES FOR CONDUCT OCCURRING PRIOR TO THERE BEING FAIR NOTICE REGARDING THE STATE OF THE LAW................................................... 16

i

VI.   Immediate Review Pursuant to Section 1292(b) Should Be Allowed to Determine Whether A Class May Be Finally Certified If There Is A Possibility That Each Member of the Class May Receive A Separate, Individual Damages Inquiry. .................................................................................................. 17

VII.  An Immediate Appeal Would Materially Advance the Litigation. ...................................................................................... 19

CONCLUSION AND REQUEST FOR RELIEF ................................................. 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITITES

**PAGE(S):**

**CASES:**

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.,*
219 F.3d 674 (7th Cir. 2000)..............................................................7

*BMW of N. Am. v. Gore,*
517 U.S. 559 (1996)........................................................................17

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998).............................................................18

*Butler v. Sears Roebuck & Co.,*
727 F.3d 796 (7th Cir. 2013).............................................................18

*Clinton v. Jones,*
520 U.S. 681 (1997)..........................................................................9

*Comcast Corp. v. Behrend,*
133 S. Ct. 1426 (2013) ...............................................................17, 19

*Dan Ryan Builders, Inc. v. Nelson,*
230 W. Va. 281, 737 S.E.2d 550 (2012)..........................................18-19

*Halvorson v. Auto-Owners Insurance Co.,*
718 F.3d 773 (8th Cir. 2013)..............................................................19

*In re Cement Antitrust Litig.,*
673 F.2d 1020 (9th Cir. 1982).............................................................8

*Kennedy v. St. Joseph's Ministries, Inc.,*
657 F.3d 189 (4th Cir. 2011)...............................................................7

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave
Achille Lauro in Amministrazione Straordinaria,*
921 F.2d 21 (2d Cir. 1990)..................................................................8

*Lienhart v. Dryrit Sys., Inc.*
    255 F.3d 138 (4th Cir. 2001)........................................................ 18

*May v. Nationstar Mortgage, LLC,*
    No. 3:12-CV-43, 2012 U.S. Dist. Lexis 102956
    (N.D. W. Va., July 24, 2012)........................................... 10, 11

*McFarlin v. Conseco Servs.,*
    381 F.3d 1251 (11th Cir. 2004)................................................ 8

*McMahon v. Advanced Title Servs. Co.,*
    261 W. Va. 413, 607 S.E.2d 519 (2004)................................. 10, 11, 12, 14

*McMahon v. Advanced Title Servs. of West Va.,*
    Case No. 101027
    (W. Va. Jan. 11, 2011 *nunc pro tunc* Nov. 17, 2010)..................... 12, 15, 16

*Reese v. BP Exploration (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011)..................................................... 8

*Rux v. Rep. of Sudan,*
    461 F.3d 461 (4th. Cir 2006).................................................... 9

*Shaffer v. Heitner,*
    433 U.S. 186 (1977)............................................................... 17

*Shelton v. Wells Fargo Bank, N.A.,*
    No. 3:09-cv-19, 2010 U.S. Dist. Lexis 143609
    (N.D. W. Va. Aug. 13, 2010).......................................... 10, 11

*Swint v. Chambers Cnty. Comm'n,*
    514 U.S. 35 (1995)................................................................. 9

*Yamaha Motor Corp., U.S.A. v. Calhoun,*
    516 U.S. 199 (1996)............................................................... 8

**STATUTES:**

28 U.S.C. § 1292(b) ................................................................. *passim*

W. Va. Code §§ 29C-1-101 *et seq.* (2013) .......................................... 13

W. Va. Code §§ 46A-1-101, *et seq.* ............................................... *passim*

W. Va. Code § 46A-2-121 ..................................................... 5, 10, 18

W. Va. Code § 59-1-7 .............................................................. 13

W. Va. Code § 59-11 (2013) ........................................................ 13

**RULES:**

Fed. R. App. P. 5 .................................................................. 1

Fed. R. Civ. P. 23(b)(3) .......................................................... 18

Fed R. Civ. P. 23(f) ............................................................... 6

**OTHER:**

Dena Aubin,
*BofA sued for unauthorized practice of law in mortgage closings,*
REUTERS LEGAL (Aug. 4, 2014) ...................................................... 3

*Discretionary Appeals of District Court Interlocutory Orders:*
*A Guided Tour Through Section 1292(b) of the Judicial Code,*
69 Yale L.J. 333 (1959) ........................................................... 19

Petitioner-Defendant Home Loan Center, Inc., d/b/a LendingTree Loans ("HLC"),[1] acting by and through the undersigned counsel and pursuant to 28 U.S.C. § 1292(b) and Rule 5 of the Federal Rules of Appellate Procedure, respectfully submits this Petition for Permission to Appeal from the District Court's July 16, 2014 Order on Class Damages.[2]  In that Order (Ex. 2 hereto, App. 4), the district court: (1) finally certified unauthorized practice of law and excessive notary charge claims for a class of West Virginia borrowers who obtained loans from HLC and who signed their loan documents before notaries not who were not under attorney supervision; (2) imposed a $2,000 statutory civil penalty per class member under the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-1-101, *et seq.* (the "WVCCPA"), for procedural unconscionability, based on the unauthorized practice of law ("UPL"); (3) imposed a second $2,000 statutory civil penalty for most members of the class under the WVCCPA for overcharging of notary fees; and (4) ruled that the court would hold individual damages trials after HLC paid the statutory penalty awards.  By separate order entered August 21, 2014 at the defense's request (Ex. 1 hereto, App. 1), the district court certified the July 16, 2014

---

[1] HLC Escrow, Inc. and Harry J. Carenbauer respectfully submit that they should be dismissed from the action following settlement.  They join in this petition and in each and every argument made on behalf of HLC pending their dismissal from the case to protect their rights.

[2] HLC has also taken a protective appeal of the July 16, 2014 Order as an immediately appealable order to the extent this Court deems it to be an order from which an immediate appeal must be taken.

Order for immediate appeal pursuant to 28 U.S.C. 1292(b). Having received the district court's certification to appeal, HLC now seeks permission from this Court to appeal from the July 16, 2014 Order in its entirety and as to all issues embraced therein. The following purely legal issues are presented:

- The district court ruled that HLC *per se* committed UPL by originating loans for which a notary, not acting under the supervision of an attorney, obtained the borrowers' signatures at closing, under circumstances in which the borrower asked no express legal questions and the notary answered no express legal questions (hereinafter a "notary-closed loan"). The same district judge who is hearing this case ruled in a prior case that no UPL claim arose on such facts, but he repudiated that ruling and reached a different conclusion in this case. That latter conclusion is at odds with the decision of a different district judge also sitting in the Northern District of West Virginia, and, in HLC's view, it differs from a 2004 ruling of the West Virginia Supreme Court of Appeals.

- The district judge ruled that charging a flat fee for notary services is *per se* unlawful and violates the WVCCPA. No other court has so ruled, and jurists could reasonably disagree about whether charging a flat fee for notary services is not unlawful if the total amount of the charges assessed do not exceed the total amount allowed by law.

- In a departure from the available guidance from West Virginia state courts, the district court ruled that the findings of liability on the UPL and notary fee claim theories permitted an award of actual and statutory damages. The state courts had ruled in other cases that no damages were appropriate given the lack of clarity in the law prior to November 2010.

- The district court awarded civil penalties notwithstanding the fact that HLC was not on notice that its conduct could give rise to civil penalties. The district court's ruling in this regard raises a constitutional question.

- The district court finally certified, and awarded damages upon, highly individualized class claims for, *inter alia*, unconscionability. Given recent decisional authority on the lack of predominance in cases

involving individualized issues, the propriety of the district court's proceeding in this manner is subject to question.

An immediate ruling from this Court on these questions would materially advance the termination of the present litigation. If this Court reverses the district court, then no further proceedings (including the possibility of numerous individual damages trials) would be necessary. Moreover, at least one other putative class action case that has been filed more recently by Plaintiff's counsel and is pending in federal court in West Virginia, and this Court's resolution of the foregoing issues would promote a more efficient resolution of that matter. Dena Aubin, *BofA sued for unauthorized practice of law in mortgage closings*, REUTERS LEGAL (Aug. 4, 2014) (Ex. 3 hereto, App. 11).

## STATEMENT OF THE FACTS NECESSARY TO UNDERSTAND THE QUESTION PRESENTED

The named plaintiff, Lijkel Dijkstra ("Plaintiff"), applied for and received a home mortgage refinance loan from HLC for his residence in the original principal amount of $114,350.00 ("Subject Loan"). (Feb. 26, 2014 Order (Ex. 4 hereto) at App. 20.) The signature portion of the closing for the subject loan was conducted on May 25, 2005 by Harry J. Carenbauer, a West Virginia notary public. Mr. Carenbauer was hired and sent to the closing by a third party vendor, Sign On The X, which has not been named as a party in the present litigation. *(Id.)* Mr. Carenbauer's participation in the loan closing involved only presenting the

3

loan documents to Plaintiff, indicating where Plaintiff should sign his name or initial the documents, witnessing and notarizing the execution of the documents, making appropriate copies, and sending the documents to HLC; Mr. Carenbauer did not answer any legal questions or provide any legal advice. *(Id.)*

Plaintiff is a Dutch immigrant who claims that he does not read or speak English well. *(Id.* at App. 21.)  Though plaintiff had no questions he wanted to ask at the closing, the district court found in its summary judgment order that "the use of a notary foreclosed the opportunity that the plaintiff would have had to ask questions about the documents or the terms of the loan, which, in Mr. Dijkstra's case, resulted in his refinancing to a *higher* interest rate than he had prior to the refinancing." *(Id.* at App. 33.)  Plaintiff has presented no evidence of either the circumstances of any other class member's closing (other than that the signatures were obtained by various notaries without attorney involvement) or of the terms of any other class member's loan.  (Dkt. Nos. 109, 164, 237 and 238.)[3]

On November 7, 2008, Plaintiff filed his class action complaint.  (Dkt. No. 3-1.)  The district court conditionally certified four claims for class treatment:[4] (1)

---

[3] As used herein "Dkt No." refers to document numbers in Civil Action No. 5:11-CV-152 (N.D. W. Va.).

[4] The district court defined the class to include: "All West Virginia consumers who obtained mortgage loans through [HLC], and whose loans were closed by persons not admitted to the practice of law in West Virginia or by persons not under the direct supervision of a lawyer admitted to the practice of law in West Virginia, and whose loans were in effect at any time after November 8, 2007."  (Jan. 3, 2013 Order)

declaratory judgment, (2) contempt of court, (3) "overcharging," and (4) violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, *et seq*. (the "WVCCPA"). (Jan. 3 2013 Order (Ex. 5 hereto, App. 42).) The first two claims assert that HLC engaged in UPL by having notaries handle the signature portion of the closing. The overcharging claim evolved into a claim that plaintiff had been charged excessive notary fees, and the WVCCPA claim evolved from a theory of unfair and deceptive acts to a theory of unconscionability under W. Va. Code § 46A-2-121 and Plaintiff eventually sought to recover under the WVCCPA for allegedly excess notary charges.[5] All other claims in the case have been settled or dismissed of the 692 loans in the class, most were closed prior to November 10, 2010 – a date that is significant for UPL claims as is explained below. (Jul 16, 2014 Order at App. 4.)

On October 30, 2013, HLC filed a motion to decertify the class, and the parties filed cross motions for summary judgment. (Dkt. Nos. 159, 160, 161 – 64.) By Order entered February 26, 2014, the district court (1) denied the motion to decertify, (2) denied HLC's motion for summary judgment, except as to the claim for contempt of court, which was dismissed, and (3) allowed Plaintiff's motion for summary judgment with respect to the declaratory judgment, overcharging, and

---

[5] The district court has permitted Plaintiff to change the bases for several of his claims over time without requiring amendment and over defense objections. (*Compare* Dkt. Nos. 3-1 *with* Dkt. Nos. 175, 177, and 179 and 208; *see also* Dkt. Nos. 223 and 231.)

procedural unconscionability claims. (Feb. 26, 2014 Order.) Thereafter, Plaintiff's non-class claims were resolved, and the district court directed the parties to submit briefing on the issue of class damages. (Dkt. No. 231.)

Following the submission of damages briefing, the district court entered its July 16, 2014 Order in which it: (1) amended its previous order conditionally certifying the class, and finally certified the class on a non-provisional basis; (2) awarded two separate class-wide statutory penalties of $2,000 for violations of the WVCCPA, and (3) ruled that, after payment of the civil penalties, the district court will hold individual damages trial for all of the 692 class members who come forward with evidence of actual damages. Upon request by the defense, the district court certified its July 16, 2014 Order for immediate appeal by separate order entered August 21, 2014.[6]

## QUESTIONS PRESENTED

HLC seeks permission to appeal to have this Court address the following legal questions:

1.    Prior to November 2010, was it *per se* UPL for a notary to conduct the signature portion of a home mortgage loan in West Virginia?

---

[6] Prior to the issuance of the order from the district court certifying an immediate appeal, HLC sought permission to appeal the final certification order pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. This Court denied that petition by Order entered August 22, 2014.

2.      Is it *per se* unlawful to charge a flat fee for notary services in West Virginia?

3.      For claims arising prior to the effective date of current UPL jurisprudence in West Virginia, may actual or statutory damages be awarded?

4.      Is it constitutional to award civil penalties for UPL and flat fees for notary services based on retrospective application of changes in the law that had not been pronounced at the time of the conduct giving rise to the present litigation?

5.      Should individualized claims for, *inter alia*, unconscionability be the subject of final certification and class-wide uniform civil penalties?

## THE REASONS WHY AN APPEAL IS AUTHORIZED BY STATUTE AND SHOULD BE ALLOWED

**I.    THIS COURT HAS JURISDICTION TO PERMIT AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND TO ADDRESS ALL ISSUES THAT ARE CLOSELY RELATED TO THE CHALLENGED ORDER.**

An interlocutory appeal under 28 U.S.C. § 1292(b) is appropriate if there is "'a controlling question of law as to which there is a substantial ground for difference of opinion' and 'immediate appeal … may materially advance the ultimate termination of the litigation.'" *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011) (quoting 28 U.S.C. § 1292(b)) (alteration in original).  A controlling question of law is "a question of the meaning of a statute or constitutional provision, regulation, or common law doctrine . . . ," *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) (Posner, J.), the

resolution of which "could materially affect the outcome of the litigation in the district court," *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982), and which does not involve the application of "settled law to fact." *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1258 (11th Cir. 2004). A certified question need not have any precedential value in order to be controlling. *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). An immediate appeal materially advances the termination of the litigation when "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation," *McFarlin*, 381 F.3d at 1258, even if the appeal will not "have a final, dispositive effect on the litigation," *Reese*, 643 F.3d at 688.

In hearing an appeal accepted under 28 U.S.C. § 1292(b), "[t]he court of appeals may not reach beyond the certified order to address other orders made in the case." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). However, a court of appeals may pendent appellate jurisdiction to review an otherwise non-appealable order or issue: "(1) when an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal; or

8

(2) when review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of an immediately appealable issue." *Rux v. Rep. of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50-51 (1995)); *see also Clinton v. Jones*, 520 U.S. 681, 707 (1997) (noting that "[t]he Court of Appeals correctly found that pendent appellate jurisdiction over this issue was proper" because the issues were "inextricably intertwined").

Accordingly, the present petition seeks appellate review not only of the July 16, 2014 Order but also of all issues that are inextricably intertwined with it or that must be reviewed to ensure a meaningful review of the July 16, 2014 Order.

## II.   THE UPL ISSUE MERITS AN IMMEDIATE DETERMINATION BY THIS COURT PURSUANT TO 28 U.S.C. § 1292(b).

The overriding legal question in the litigation is: what is the standard for adjudicating a UPL claim under West Virginia law? Specifically, prior to November 17, 2010, did a notary-closed loan necessarily involve UPL, even if no legal advice was expressly dispensed by the notary at the closing, or does the answer depend on whether legal advice was given by the notary?  In the proceedings below, the district court made a purely legal ruling that a closing so conducted is *per se* the unauthorized practice of law.[7]  But there is disagreement in

---

[7] Though the district court's ruling on liability was initially handed down in the court's February 26, 2014 order on summary judgment, the ruling is inextricably intertwined with the July 16, 2014 damages order.  In its July 16, 2014 Order, the district court ruled that HLC must pay a $2,000 civil penalty per class member for

9

the available decisional authority as to this issue: (1) the trial judge below, Chief Judge Bailey of the Northern District of West Virginia answered the question "no" in a 2010 decision in *Shelton v. Wells Fargo Bank, N.A.*, No. 3:09-cv-19, 2010 U.S. Dist. Lexis 143609, at *12 (N.D. W. Va. Aug. 13, 2010), and, then, he changed his mind and answered the question "yes" in this case; (2) a sister judge in the same district, Judge Groh, decided the issue differently in a 2012 decision, *May v. Nationstar Mortgage, LLC*, No. 3:12-CV-43, 2012 U.S. Dist. Lexis 102956, at *19-20 (N.D. W. Va., July 24, 2012), in which she made a ruling consistent with Judge Bailey's decision in *Shelton* (and that is *not* consistent with the decisions of Judge Bailey below in the present case); (3) a 2004 decision of the West Virginia Supreme Court supports conducting a fact-based inquiry, as opposed to a categorical inquiry, for determining whether a notary-closed loan involved UPL for loans closed prior to the current state of the law for UPL, *McMahon v. Advanced Title Servs. Co.,* 261 W. Va. 413, 607 S.E.2d 519, 522 (2004).

The law on UPL in West Virginia has evolved substantially during the past decade. First, in 2003, the West Virginia State Bar's Unlawful Practice Committee

---

using notaries to conduct the signature portions of real estate closings completed in West Virginia, which, the district court concluded, involved UPL and necessarily violated the WVCCPA, at W. Va. Code § 46A-2-121, which prohibits procedurally and substantively unconscionable loans. There could be no award of damages if the court had not found liability for UPL. Further, in the July 16, 2014 Order, the district court again set out its rationale for concluding that HLC had engaged in the unauthorized practice of law.

(the "UPC") issued its Advisory Opinion 2003-01 (Ex. 6 hereto, App. 60). The Advisory Opinion, to the extent it carried the force of law.[8] created a dichotomy between ministerial acts, such as "simple execution of documents" and situations in which "legal principles are applied to the factual situation to determine if and how the transaction should be concluded," such as determining the validity of executed documents. *Id.*

Second, in 2004, state court litigation was initiated to determine whether it was UPL for, *inter alia*, a layperson to conduct the signature portion of closing. The trial court answered this question categorically in the affirmative, but the West Virginia Supreme Court vacated the decision and remanded the case for further development of the factual record. *McMahon*, 216 W. Va. 413, 607 S.E.2d 519.

Third, for closings occurring prior to 2010, courts held that it was not *per se* UPL for a layperson to conduct the signature portion of closing, and, consistent with the 2004 *McMahon* decision, decided UPL claims based on whether legal advice was actually dispensed at closing. *May,* 2012 U.S. Dist. Lexis 102956, at *19-20; (concluding that the notary present at closing provided only ministerial and clerical services that did not constitute UPC); *Shelton*, 2010 U.S. Dist. Lexis 143609, at *12 (same).

---

[8] HLC does not concede that the Advisory Opinion established the law. That is a disputed legal issue that is appropriate for presentation on appeal.

11

Fourth, in 2010, the *McMahon* trial court entered a consent order concluding, *inter alia*, that, lawyers generally are required to conduct or supervise mortgage loan closings. *See McMahon v. Advanced Title Servs. of West Va.*, Civ. Action No. 01-C-121 ¶¶ 49-58 (Brooke Cty. Cir. Ct. Mar. 31, 2010) (Ex. 7 hereto, App. 79) (the "McMahon Order"). On January 27, 2011, *nunc pro tunc* November 17, 2010, the West Virginia Supreme Court of Appeals affirmed the 2010 *McMahon* circuit court order without limitation and held that it was "plainly right." *McMahon v. Advanced Title Servs. of West Va.*, Case No. 101027 (W. Va Jan. 11, 2011 *nunc pro tunc* Nov. 17, 2010) (Ex. 8 hereto, App. 110) (the "McMahon Decision").

In the present case, the district court applied the 2010 *McMahon* Decision retroactively and categorically treated pre-November-2010 notary closings differently than other courts (including Judge Bailey's) previously have. The decision below puts at issue the standard to be applied in assessing UPL claims, and the existence of diverging judicial viewpoints on this issue of law provides a basis for immediate determination by this Court.[9]

---

[9] Further, an immediate appeal would permit the Court of Appeals to address arguments that the district court chose to ignore from the summary judgment briefing, namely, that there is no evidence of actual harm to any of the class members because (1) West Virginia law permits non-lawyers to close loans when the non-lawyer is a full time employee of the lender and when the non-lawyer is under the supervision of a lawyer, so it is difficult to see how the borrowers could have been injured by the technical violation (which, at worst, was not widely

12

## III. SECTION 1292(b) REVIEW ALSO IS APPROPRIATE TO DETERMINE WHETHER FLAT FEES FOR NOTARY CHARGES ARE *PER SE* ILLEGAL.

For the notary fee theory, the district court employed a similar all-or-nothing approach. The present Plaintiff was assessed a flat fee of $110 for the notary's services, and the class members generally were assessed a similar fee. Plaintiff argued that the fee was an illegal overcharge because it was not calculated by express reference to the list of charges set out in the West Virginia Code concerning notary charges. HLC argued that the notary fees could not constitute an illegal overcharge if the total amount charged to Plaintiff did not exceed the total amount permitted by the West Virginia Code. Specifically, under West Virginia's Uniform Notary Act ("Notary Act"), W. Va. Code § 29C-1-101 *et seq.* (2013) and W. Va. Code §§ 59-1-7 and -11 (2013), a notary could charge specified amounts for delineated services. The district court specifically declined to decide the issue of whether there had actually been an overcharge to give rise to a claim

---

known to be a violation at the time); (2) A lawyer appearing on behalf of both parties at the closing would not have been ethically able to provide legal advice to the borrower concerning loan terms if that advice indicated that the loan terms were unfavorable to the borrower (and therefore were favorable to the lawyer's other client); (3) for the same reason a lawyer appearing only on behalf of HLC would not be able give legal advice to inform the borrower if a loan terms were unfavorable; (4) a full time employee of HLC would not be able to give legal advice to the borrower and would not otherwise be expected to inform the borrower that the loan terms were unfavorable (except to the extent of TILA compliance and no deficiencies as to TILA compliance are alleged); and (5) a lay person under the direct supervision of a lawyer would not be able to give legal advice at the closing.

13

for "overcharging" and instead decided that calculating the notary charges on a flat-fee basis was necessarily unlawful. (<u>Ex. 4</u> at App. 34; <u>Ex 2</u> at App. 9.) There is no established decisional authority interpreting West Virginia law on this subject other than the district court's ruling below, and HLC respectfully submits that reasonable minds could disagree with the district court that liability should be imposed on an overcharging theory when a plaintiff did not prove that he actually paid an excess charge. Under these circumstances, the district court's establishment of a *per se* standard for determining a violation of the law that brings with it a second, uniform, class-wide civil penalty of $2,000 merits immediate review by this Court.

## IV. THIS COURT SHOULD GRANT REVIEW UNDER 28 U.S.C. § 1292(b) TO RULE ON THE OPEN LEGAL QUESTION OF WHETHER DAMAGES, INCLUDING STATUTORY DAMAGES, MAY BE AWARDED FOR UPL CLAIMS BASED ON NOTARY CLOSINGS PRIOR TO THE WEST VIRGINIA SUPREME COURT'S 2010 *McMAHON* DECISION.

There is an open question as to whether damages and civil penalties may be imposed for UPL based on notary closings occurring prior to the 2010 *McMahon* decision. HLC argued the issue below, and the district court sided with Plaintiffs on the issue and determined that actual damages and civil penalties may be awarded for violations occurring prior to the 2010 *McMahon* decision.

The 2010 Circuit Court Order in *McMahon* was a stipulation and agreed order submitted by the parties that was entered by the court. According to that

14

Order, "The express purpose of the parties in entering into and agreeing to this Agreed Order is to clearly define what constitutes [UPL] in the State of West Virginia relating to real estate transactions of property located within . . . this State." (Ex. 7 at App. 82 - 83, ¶ 7.)  Ultimately, the parties and the court agreed that notary closings generally constitute UPL; significantly, however, the McMahon Order also included the following rulings:

> 68. Interveners [West Virginia Bankers Association, Inc., and the West Virginia Association of Community Bankers, Inc., which had been permitted to intervene in an order entered February 27, 2007] shall have forty-five (45) days from the date of the Entry of this Order [March 27, 2010] to notify their members of the provisions of this Agreed Order. After the expiration of this time, Interveners will be permanently enjoined from conducting [notary closings].
>
> 69. Neither the Interveners, nor their members shall be assessed any monetary damages, costs or attorney fees in this action.

(Ex. 7 at App. 98 (headings removed).)  In other words, given that the law was changing, the trial court's order created provisions for notice, a compliance schedule, and a safe harbor from damages, costs and fees.  The West Virginia Supreme Court of Appeals did not exclude these provisions of the trial court's order in declaring the order to be "plainly right." (Ex. 8, App. 110.)

The district court's decision to impose a substantial $2,000 per class member civil penalty differs from the *McMahon* order, thus creating divergent holdings on

15

the issue of whether damages (including statutory damages) may be awarded for pre-*McMahon* violations.[10] This Court should take up the issue and provide clarity on this disputed legal issue.

## V.    SECTION 1292(b) REVIEW ALSO IS APPROPRIATE TO DETERMINE THE CONSTITUTIONALITY OF AWARDING CIVIL PENALTIES ON THE UPL AND NOTARY FEE THEORIES FOR CONDUCT OCCURRING PRIOR TO THERE BEING FAIR NOTICE REGARDING THE STATE OF THE LAW.

Prior to the West Virginia Supreme Court's 2010 McMahon Decision, there was no ruling from that court categorically prohibiting notary closings as UPL, and the 2003 UPC decision was, at best, ambiguous. Prior to the ruling on the notary fee issue by the district court in this case, there was no ruling from any court categorically prohibiting the charging of a flat fee for notary services. Nevertheless, in its July 16, 2014 Order, the district court retrospectively applied the law and imposed harsh civil penalties of $2,000 per theory, per class member.

With respect to punitive damages, the United States Supreme Court has held that: "Elementary notions of fairness dictate that a person receive fair notice not

---

[10] HLC also intends to argue that the district court's award of civil penalties in those is an abuse of discretion. To the extent civil penalties can be awarded at all, Plaintiff presented no evidence justify any increase above the statutory minimum. Further: (1) there is no evidence that HLC gained anything by using notaries to close loans; (2) even if the borrowers had questions which they were unable to ask during the closing, they actually saved money because HLC did not charge them for a lawyer to appear at closing; (3) there is no allegation that HLC actually prevented anyone from consulting a lawyer prior to closing or bringing a lawyer to the closing; and (4) class membership is not subject to any requirement that the class members could not consult a lawyer, did not consult a lawyer, or were not themselves lawyers.

only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of N. Am. v. Gore*, 517 U.S. 559, 574 (1996). "[T]he basic protection against 'judgments without notice' afforded by the Due Process Clause, is implicated by civil penalties." *Id.* at 574 n.22 (1996) (citing *Shaffer v. Heitner*, 433 U.S. 186, 217 (1977) (Stevens, J., concurring in judgment)).

In the present case, there is a legal question regarding the application of these constitutional principles to Plaintiff's request for substantial civil penalties on the notary fee and UPL theories. Though the district court did not expressly address the issue, the district court sided with Plaintiff. HLC respectfully requests that this Court accept an immediate appeal and address the constitutionality of the civil penalty award.

## VI. IMMEDIATE REVIEW PURSUANT TO SECTION 1292(b) SHOULD BE ALLOWED TO DETERMINE WHETHER A CLASS MAY BE FINALLY CERTIFIED IF THERE IS A POSSIBILITY THAT EACH MEMBER OF THE CLASS MAY RECEIVE A SEPARATE, INDIVIDUAL DAMAGES INQUIRY.

The district court's July 16, 2014 Order also presents legal questions as to the parameters of the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) in which the Court vacated a class certification decision and held that plaintiff must demonstrate "that damages are capable of measurement on a class[-]wide basis" and if "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class,"

17

then a plaintiff "cannot show Rule 23(b)(3) predominance[.]"  Specifically, the questions here are (1) whether an action may be permitted to proceed as a class action if the district court determines that individual damages trials are potentially appropriate for each of the class members, and (2) whether unconscionability claims are susceptible of class treatment, given that the "harm" of substantive unconscionability must be proven for each member of the class based on each class members' particular loan terms.

One circuit has held, as did the district court below, that class certification may be maintained, even if individual damages hearings might be necessary, *Butler v. Sears Roebuck & Co.*, 727 F.3d 796, 798, 801 (7th Cir. 2013); however, this ruling appears inconsistent with this Court's pre-*Comcast* holding that the need for proof of individualized damages may be enough to defeat class certification, *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998); *Lienhart v. Dryrit Sys., Inc.* 255 F.3d 138, 147 (4th Cir. 2001).  HLC respectfully requests that this Court allow an appeal to determine whether, as a matter of law, an action may proceed as a class action if it involves the potential for a separate damages trial for each individual class member.

A similar issue is presented with respect to the issue of substantive unconscionability, which is a required element of a claim under W. Va. Code § 46A-2-121.  *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550,

558 (2012). In a case such as this one, in which the members of the class have varying loan terms, and liability for unconscionability depends upon a showing that UPL in the closing caused a particular class member to accept substantively unfavorable terms, it is questionable whether, as a matter of law, (1) the action may be maintained as a class action; (2) a class-wide finding of liability is feasible absent some common substantive loan term; and (3) a uniform class-wide civil penalty is appropriate. *Cf. Halvorson v. Auto-Owners Insurance Co.*, 718 F.3d 773 (8th Cir. 2013) (holding that individualized questions about breach of contract and bad faith liability issues predominated over any common evidence). This court should permit an appeal to determine whether such a claim may proceed as a class certified claim in light of *Comcast*.

## VII. AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE LITIGATION.

"Reversal on appeal of a 'controlling question' may advance the termination of the suit in three ways: By leading directly to the entry of final judgment . . . upon remand, by preventing a reversible error which would require an entire new trial, or by preventing error which, while not reversible, protracts the litigation." *Discretionary Appeals of District Court Interlocutory Orders: A Guided Tour Through Section 1292(b) of the Judicial Code*, 69 Yale L.J. 333, 343 (1959). Here, an immediate appeal, if successful, could lead directly to the dismissal of all or a significant portion of the case and could prevent up to 692 possible individual

19

damages trials that need not occur if the district court is incorrect in his UPL, notary fee or class certification analysis. Even if HLC is only partially successful, an appeal is likely to narrow the issues for resolution. Accordingly, immediate appellate review is appropriate at this time.

## CONCLUSION AND REQUEST FOR RELIEF

Petitioners respectfully request that this Court grant immediate appellate review and vacate and reverse the district court's erroneous class damages order.

Respectfully submitted, this the 2nd day of September, 2014.


Of Counsel:
Randall L. Saunders
W.Va. State Bar No. 90911
NELSON MULLINS RILEY &
SCARBOROUGH LLP
949 Third Avenue / Suite 200
Huntington, WV 25701
Phone: (304) 526-3500

Joseph S. Dowdy
N.C. State Bar No. 31941
KILPATRICK TOWNSEND &
STOCKTON LLP
4208 Six Forks Road, Ste. 1400
Raleigh, North Carolina 27609
Phone: (919) 420-1700
Fax: (919) 420-1800

## CERTIFICATE OF COMPLIANCE
### WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENT

1.     This brief complies with the page limitation of Fed. R. App. P. 5 because this brief does not exceed 20 pages, excluding those parts of the brief exempted by Fed. R. App. P. 5.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using MS Word 2003 in Times New Roman 14-point font.

This the 2nd day of September, 2014.


_Joseph S. Dowdy_
Joseph S. Dowdy
N.C. State Bar. No. 31941
KILPATRICK TOWNSEND &
STOCKTON LLP
4208 Six Forks Road, Ste. 1400
Raleigh, North Carolina 27609
Phone:  (919) 420-1700
Fax:  (919) 420-1800
*Attorneys for Petitioner*

US2008 5928346 2

## CERTIFICATE OF SERVICE

I hereby certify that, on September 2, 2014, the foregoing *Defendant Home Loan Center, Inc.'s Petition for Permission to Appeal From the District Court's Order on Class Damages* was served on the counsel for Plaintiff set out below by placing a copy of the same in a postage prepaid envelope designating delivery by First-Class Mail and properly addressed as follows:

John W. Barrett, Esq.
Jonathan R. Marshall, Esq.
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com

Michael A. Adams, Esq.
Hinerman & Associates, PLLC
P. O. Box 2465
Weirton, WV 26062
maa@hinermanlaw.com

Joseph S. Dowdy
KILPATRICK TOWNSEND &
STOCKTON LLP
4208 Six Forks Road, Ste. 1400
Raleigh, North Carolina 27609
Phone: (919) 420-1700
Fax: (919) 420-1800
*Attorneys for Petitioner*

US2008 5928346 2